UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FINCA SANTA ELENA, INC., et al.,**<br><br>         Plaintiffs,<br><br>         v.<br><br>**U.S. ARMY CORPS OF ENGINEERS, et al.,**<br><br>         Defendants. | Case No. 1:11-cv-00296 (CRC) |

### MEMORANDUM OPINION AND ORDER

Plaintiffs in this case own property and conduct environmental research and conservation activities along the Rio de la Plata in northern Puerto Rico. For decades, the Army Corps of Engineers has been studying, planning, and partially constructing a flood control project to protect residential areas within the river's floodplain. Fearing that the project will diminish their use and enjoyment of the area, as well as their property values, plaintiffs filed suit to enjoin further construction. They also seek a declaration that the Corps and its Chief of Engineers violated the Clean Water Act ("CWA"), the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), and the Administrative Procedure Act ("APA"), as well as an order invalidating the approvals and statutory findings associated with the project. The Court previously granted the Government's partial motion to dismiss all claims challenging any part of the project other than its most downstream portion ("Phase 1A")—the only phase of the project that has ever received Congressional appropriations. Both sides now move for summary judgment. Because the Corps has completed virtually all construction on Phase 1A and has represented that it will conduct further administrative and environmental reviews before any work on future phases of the project takes place, the Court will deny both motions and dismiss this case as prudentially moot.

## I. Background

### A. Factual Background[1]

The Corps has been studying, designing, and planning the Rio de la Plata flood control project since 1942. Defs.' Mot. to Dismiss at 13. Yet, the only construction funding the project has ever received is a one-time congressional appropriation for its most downstream portion, Phase 1A, as part of the American Recovery and Reinvestment Act ("ARRA") of 2009. First Am. Compl. ¶ 148. According to the uncontested declaration of Gregory Schulz, Chief of the Construction Division for the Corps' office that oversees Puerto Rico, Phase 1A was approximately 85 percent complete as of August 2014, with "all major Project features for flood control purposes" on schedule for completion by October 2014 and all remaining work by January 2015. Defs.' Supplemental Mem. in Supp. of Defs.' Cross-Mot. for Summ. J., Decl. of Gregory Schulz ¶¶ 6–7. Plaintiff Finca Santa Elena, Inc. is a Puerto Rico corporation that owns property located within the project's footprint, including an 18th century sugar mill that is listed on the National Register of Historic Places. First Am. Compl. ¶¶ 10–13. Plaintiff Román Más Foundation is a non-profit organization dedicated to preserving and protecting Puerto Rico's natural and cultural resources, including its rivers and wetlands. Id. at 18–19. Plaintiff Angel Román Más resides in Puerto Rico and claims to visit the Rio de la Plata approximately once or twice a month for recreation and study. Id. at 28–30. Plaintiffs ("Finca and Román Más") have not disputed sworn statements by the Corps that it will conduct additional administrative and environmental reviews before beginning any additional phases of the project, just as the Corps has done "on many occasions over the years before Phase 1A even began construction." Mem. Op. July 9, 2012 at 10. And counsel for the Corps represented to the Court at the most recent hearing that "nothing further will happen without" additional

---

[1] See Mem. Op. July 9, 2012 at 2–4 for a more detailed review of the lengthy factual history of this project.

assessments of environmental law and historic preservation compliance. Hr'g Tr. 23: 6–20, Oct. 15, 2014. These assessments will include, according to counsel, "another [Environmental Assessment] and [Finding of No Significant Impact] at a minimum" as "[t]hat's the way the Corps has handled it before and repeatedly." Id.

### B. Procedural Posture

Finca and Román Más filed their initial complaint in February 2011. They amended the complaint in June 2011. A year later, Judge Wilkins, who previously oversaw the case, granted the Government's partial motion to dismiss all claims challenging any portion of the project beyond Phase 1A. The parties' cross-motions for summary judgment became ripe in May 2013. After the case was reassigned to this Court in April 2014, the Court requested a report on the "status of the 'Phase 1A'/'ARRA' flood control project and the impact, if any, of the project's current status on the Plaintiffs' requested relief." After receiving the status report and holding a status conference on August 6, 2014, the Court ordered supplemental briefing on whether the progress of Phase 1A rendered the case moot. The Court held a hearing on that question on October 15, 2014.

### II. Standard of Review

The party raising the issue bears the burden of establishing mootness, "and it is a heavy burden." Fund For Animals v. Williams, 311 F. Supp. 2d 1, 6 (D.D.C. 2004) aff'd sub nom. Fund For Animals, Inc. v. Hogan, 428 F.3d 1059 (D.C. Cir. 2005). Article III limits federal courts to resolving actual cases or controversies; it "prevents their passing on moot questions—ones where intervening events make it impossible to grant the prevailing party effective relief." Burlington N. R. Co. v. Surface Transp. Bd., 75 F.3d 685, 688 (D.C. Cir. 1996) (citing Church of Scientology v. United States, 506 U.S. 9, 11 (1992)). For a federal court to adjudicate a case, "'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) (citations omitted). The doctrine

of prudential mootness refers to the discretion enjoyed by federal courts in exercising their Article III powers. Penthouse Int'l, Ltd. v. Meese, 939 F.2d 1011, 1019 (D.C. Cir. 1991). The doctrine "permits the court in its discretion to 'stay its hand, and to withhold relief it has the power to grant' by dismissing the claim for lack of subject matter jurisdiction." MBIA Ins. Corp. v. F.D.I.C., 708 F.3d 234, 245 (D.C. Cir. 2013) (quoting Chamber of Commerce v. Dep't of Energy, 627 F.2d 289, 291 (D.C. Cir. 1980)). A court may declare a case prudentially moot when "[t]he precise conduct that prompted th[e] suit . . . has come to an end" and the plaintiff will have "ample opportunity . . . to renew their complaint." Chamber of Commerce, 627 F.2d at 292.

### III. Analysis

There is no dispute that the central question in this lawsuit is whether the Corps satisfied its NEPA and CWA obligations in deciding to proceed with Phase 1A of the project after receiving funding under ARRA. See Finca and Román Más's Mot. for Summ. J. at 9 (describing the "ARRA project" as "the subject of this litigation"). Because Phase 1A of the project is now essentially complete, however, the Court cannot provide effective relief regarding the subject of this litigation. The Court therefore concludes that the case is prudentially moot.

#### A. Injunctive Relief

Finca and Román Más argue that "[e]ven if . . . Plaintiffs choose not to seek[] an injunction requiring the Corps to undo or modify the ARRA project, the mere fact that this injunctive relief remains available defeats a claim of mootness." Pls.' Response to Defs.' Supplemental Mem. at 6–7. Yet, Finca and Román Más do not actually seek such an injunction. As their counsel acknowledged at the hearing: "We're not seeking [deconstruction of the project.]" Hr'g Tr. 12: 11–12, Oct. 15, 2014. Instead, they argue that the mere existence of hypothetical relief should defeat the Government's mootness argument. As the Fifth Circuit has found, however, "theoretically" available relief sufficient to defeat mootness does not include "imagined possibilities

beyond those requested in the complaint, but rather" involves "giv[ing] the plaintiff the benefit of the doubt as to whether certain *requested relief* would in fact ease or correct the alleged wrong." Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Eng'rs, 217 F.3d 393, 397 (5th Cir. 2000) (emphasis added). The Court finds that hypothetical relief the plaintiffs did not actually request in their complaint cannot overcome the mootness arguments presented here.

Even if Finca and Román Más had requested that the Court order the Government to dismantle or reverse the project, the Government correctly identifies a long line of cases in the courts of appeal holding environmental challenges to completed construction projects to be moot. See Weiss v. Sec'y of Dep't of Interior, 459 F. App'x 497, 500–501 (6th Cir. 2012) (holding NEPA and NHPA claims moot because construction had been completed); Sierra Club v. U.S. Army Corps of Eng'rs, 277 F. App'x 170, 172 (3rd Cir. 2008) (dismissing NEPA complaint as prudentially moot because wetlands had already been substantially filled); One Thousand Friends of Iowa v. Mineta, 364 F.3d 890, 893 (8th Cir. 2004) ("A NEPA claim does not present a controversy when the proposed action has been completed and no effective relief is available. . . . [Both injunctive and declaratory relief are] similarly mooted by the completion of the construction project."); Bayou Liberty, 217 F.3d at 396 ("When a party seeks an injunction to halt a construction project the case may become moot when a substantial portion of that project is completed"); Knaust v. City of Kingston, 157 F.3d 86, 88 (2d Cir. 1998) (rejecting appeal of denial of injunction in NEPA case because completion of construction rendered case moot). While the D.C. Circuit does not appear to have addressed the precise question of the mootness of a NEPA claim involving a completed construction project, it has found a NEPA claim to be moot when the matter in dispute—a plan for wildlife management—had already been implemented. Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt., 460 F.3d 13, 18–19 (D.C. Cir. 2006). The Court is aware of no case, and plaintiffs

cite none, where a court in a NEPA case ordered a defendant to dismantle a completed construction project.

In arguing that their suit still presents a live controversy, Finca and Román Más rely primarily on West v. Secretary of Department of Transportation, 206 F.3d 920, 922 (9th Cir. 2000), where a split panel of the Ninth Circuit concluded that a NEPA challenge to a highway interchange project was not moot despite the completion of the first of the project's two phases. West is factually distinguishable from the circumstances presented here. In that case, the Federal Highway Administration prepared no Environmental Assessment whatsoever, as it had decided to apply a categorical exclusion to the project. Id. at 926–27. Here, by contrast, the Corps has conducted several Environmental Assessments over the years the project has been in development in an effort to comply with NEPA. Moreover, the Ninth Circuit in West did not actually order the completed portion of the highway interchange project to be deconstructed, instead noting that mitigation measures could provide partial relief. Id. at 929 ("While we recognize that it may be too late to correct problems that the requisite environmental review might have identified, we are not convinced that all the problems identified by such a review would be immune from all mitigation measures."). In fact, the court acknowledged that the precise type of environmental review required for the second stage of the project could not be determined until the timing, funding, and scope of the second stage "takes shape more clearly." Id. Thus, despite the West majority's assertions to the contrary, the dissent correctly notes that the majority's acknowledgment of the need to leave the final disposition of the case open pending further activity strongly suggests that review of the merits was premature. Id. at 930 n.14. In short, in light of the factual distinctions, the split panel, the uncertain final disposition, and the substantial contradictory authority provided by the Corps supporting a finding of prudential mootness in this case, the Court finds West unpersuasive.

B. <u>Declaratory Relief</u>

Finca and Román Más also contend that, even if their claim for injunctive relief is moot, their request for declaratory relief is not because "a declaration . . . would preclude the Corps from undertaking any additional work pursuant to the [existing] authorizations, guaranteeing additional environmental evaluations before the Corps could commence any future construction." Pls.' Response to Defs.' Supplemental Mem. at 3. But the Government indicates that additional evaluations will occur before any additional work on the upstream components of the project will take place. As noted above, Finca and Román Más "do not contest Defendants' sworn statements that the Corps will likely conduct additional administrative and environmental review" before beginning any additional phases of the project, just as the Corps did "on many occasions over the years before Phase 1A even began construction." Mem. Op. July 9, 2012 at 10. Government counsel reiterated at the hearing that "before anything significant happens . . . there would be another [Environmental Assessment] and [Finding of No Significant Impact] at a minimum" because "[t]hat's the way the Corps has handled it before and repeatedly." Hr'g Tr. 23: 6–20, Oct. 15, 2014. A new Environmental Assessment is precisely the type of relief Finca and Román Más have sought. Regardless, the Court concluded previously that "when it is uncontested that the agency will engage in further administrative review before construction on the upstream project components, judicial intervention would inappropriately interfere with the Corps' process." Mem. Op. July 9, 2012 at 10–11. As the Supreme Court held in a similar environmental case, a plaintiff's claim seeking review of administrative action is unripe when "the possibility that further consideration will actually occur before [implementation of a plan] is not theoretical, but real." <u>Ohio Forestry Ass'n, Inc. v. Sierra Club</u>, 523 U.S. 726, 735 (1998). Thus, the Corps' commitment to future assessments, and its history of conducting such assessments before engaging in significant

new activity, makes further judicial review of this matter inappropriate at this time. Should the Corps renege on that promise, Plaintiffs would be free to renew their complaint.

Finally, Finca and Román Más assert that declaratory relief is necessary because it would lift a "cloud" of uncertainty over their land which "effectively precludes investment of capital by landowners or developers . . . due to the potential loss of that investment if the land is taken" for any future upstream project components. Pls.' Response to Defs.' Supplemental Mem. at 8–9. The plaintiffs assert variations of this argument throughout their filings in this case, but the D.C. Circuit has explicitly held that "the possibility that the petitioner may have to make capital budgeting decisions under a cloud of uncertainty" is not sufficient to make a claim ripe for review. Natural Res. Def. Council, Inc. v. EPA, 859 F.2d 156, 166 (D.C. Cir. 1988). Although Finca and Román Más complain that the uncertainty has inhibited the likes of Wal-Mart and Walgreens from purchasing their property, this circuit's precedent clearly considers such hardships insufficient to establish ripeness. Absent a ripe controversy, the case is prudentially moot.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' Motion for Summary Judgment [ECF No. 39] and Defendants' Cross-Motion for Summary Judgment [ECF No. 40] are DENIED. It is further

**ORDERED** that Plaintiffs' Amended Complaint [ECF No. 13] is DISMISSED without prejudice.

This is a final, appealable order.

**SO ORDERED.**

                    CHRISTOPHER R. COOPER
                    United States District Judge

Date:  January 6, 2015

new activity, makes further judicial review of this matter inappropriate at this time. Should the Corps renege on that promise, Plaintiffs would be free to renew their complaint.

Finally, Finca and Román Más assert that declaratory relief is necessary because it would lift a "cloud" of uncertainty over their land which "effectively precludes investment of capital by landowners or developers . . . due to the potential loss of that investment if the land is taken" for any future upstream project components. Pls.' Response to Defs.' Supplemental Mem. at 8–9. The plaintiffs assert variations of this argument throughout their filings in this case, but the D.C. Circuit has explicitly held that "the possibility that the petitioner may have to make capital budgeting decisions under a cloud of uncertainty" is not sufficient to make a claim ripe for review. Natural Res. Def. Council, Inc. v. EPA, 859 F.2d 156, 166 (D.C. Cir. 1988). Although Finca and Román Más complain that the uncertainty has inhibited the likes of Wal-Mart and Walgreens from purchasing their property, this circuit's precedent clearly considers such hardships insufficient to establish ripeness. Absent a ripe controversy, the case is prudentially moot.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' Motion for Summary Judgment [ECF No. 39] and Defendants' Cross-Motion for Summary Judgment [ECF No. 40] are DENIED. It is further

**ORDERED** that Plaintiffs' Amended Complaint [ECF No. 13] is DISMISSED without prejudice.

This is a final, appealable order.

**SO ORDERED.**

CHRISTOPHER R. COOPER
United States District Judge

Date:  January 6, 2015